1
2
3
4
5
6
7
8 **IN THE UNITED STATES DISTRICT COURT FOR THE**
9 **EASTERN DISTRICT OF CALIFORNIA**
10

| | | |
|---|---|---|
| 11 **UNITED STATES OF AMERICA,** | ) | **D.C. Number: 1:09-CR-14 AWI** |
| 12 **Plaintiff-Appellee**, | ) | **[Mag. No. 6:07-MJ-280 WMW]** |
| 13 **v.** | ) | |
| 14 **BRENT GORDON LONG,** | ) | **ORDER ON APPEAL OF** **CONVICTION** |
| 15 **Defendant-Appellant**. | ) | (Doc. No. 29) |

16
17
18

Brent Gordon Long ("Long") appeals his conviction following a bench trial for violation of 36 C.F.R. § 2.31(a)(2), tampering with property on government land.  The Magistrate Judge denied Long's request for an acquittal, or in the alternative, a motion for new trial.  For the reasons that follow, the conviction will be reversed.

### SCOPE OF REVIEW

An appeal from a criminal conviction imposed by a Magistrate Judge lies with a "judge of the district court and must first be brought in the district court before prosecution in the court of appeals."  United States v. Soolook, 987 F.2d 574, 575 (9th Cir. 1993); see also 18 U.S.C. § 3402.  The district court's review of the Magistrate Judge's judgment is governed by the same standard as an appeal from a judgment of a district court to the court of appeals.  Fed. R. Crim. P. 58(g)(2)(D); United States v. McFarland, 369 F. Supp.2d 54, 56-57 (D. Me. 2005); United States v. Fautanu, 751 F. Supp. 1420, 1421 (D. Haw. 1990); United States v. Ramirez, 555 F. Supp.

736, 738-39 (E.D. Cal. 1983).  In other words, the district court "is to apply the same scope of review as a United States Circuit Court of Appeals would apply in considering an appeal of a judgment from a United States District Court."  United States v. Charrington, 285 F.Supp.2d 1063, 1066 (S.D. Ohio 2003).

## BACKGROUND

On June 25, 2008, the Magistrate Judge held a bench trial.  The government first called Ranger John Gulas ("Ranger Gulas").  Ranger Gulas testified that in 2007, he set up a motion detector camera in Yosemite West for surveillance purposes.  See Reporter's Transcript of June 25, 2008 (hereinafter "RT") 9:24-25; 12:5-8.  In early September, 2007, Ranger Gulas checked the battery for power, changed the battery, and replaced the memory card.  RT 17:5-11.  Ranger Gulas testified that when he secured the camera and left it at an undisclosed location, the camera was working correctly and had approximately 17 pictures in storage.  RT 17:11-17.  There was a National Park Service ("NPS") serial number located on the inside case of the camera.  RT 19:4-9.  Ranger Gulas testified that a sticker indicating that it was a government camera was *possibly* located on the back of the camera at the time he had last seen it.  RT 21:1-25 (emphasis added).

Ranger Michael Brindeiro (" Ranger Brindeiro"), who was called by the government, testified that he was asked by Ranger Christopher Cagle ("Ranger Cagle") to pick up the camera from the Four Seasons.[1]  RT 38:25-39:1-13.  Ranger Brindeiro testified that he opened the camera and noticed that the memory card was not inside the camera.  RT 39:14-21.  On cross-examination, Ranger Brindeiro testified that he only observed one government sticker on the inside of the camera.  RT 41:22-25; RT 42:1.

Ranger Cagle, who was also called by the government, testified that the purpose of the camera placement was to monitor commercial traffic on approximately 200 feet of Park Service property (a railroad grade road that ends or that begins at the end of Hinnis Ridge Road.)  RT 44:23-25; RT 45:1.  The camera was placed on government property to take pictures on the 200 foot section of road, which is government property.  RT 49:16-24.

---

[1]Ranger Cagle testified that the Four Seasons is a property management rental company located in Yosemite West.  RT 52:14-17.

1    Ranger Cagle testified that on September 8, 2007, he was called into service and was

2    notified that a Park Service camera had been found on Hinnis Ridge Road.  RT 51:18-22.

3    Ranger Cagle and Ranger Gulas then met with Long at the Four Seasons.  RT 49:16-24.  Ranger

4    Cagle testified that he asked Long if he had found a camera and Long stated that he found a

5    camera on a log at the end of Hinnis Ridge Road.  RT 53:20-25; RT 54:6-10.  Long told Ranger

6    Cagle and Ranger Gulas that he picked up the camera, opened it and turned it off, disconnected

7    the battery, and took the memory card out.  RT 54:8-10.  Ranger Cagle testified that Long told

8    him that he took the memory card out of the camera in order to determine what photos were on

9    the memory card.  RT 54:11-12.  Ranger Cagle testified that Long told him that he knew the

10   camera was government property because of a government property sticker on the inside of the

11   camera.  RT 55:3-5.  The Rangers then had Long drive back to his house to retrieve the memory

12   card.  RT 57:10-24.  Ranger Cagle testified that Long's house is approximately six miles from

13   the Four Seasons.  RT 57:17-21.  After Long returned the card, Ranger Cagle determined that the

14   camera was in full working order.  RT 58:21-24.

15   Richard Gordon Long ("Richard"), the defendant's father, was called as a witness by the

16   Government.  Richard testified that he was with his son when the Defendant located the camera.

17   RT 72:5-6.  Richard testified that he and Long found the camera on a log, not anchored or

18   chained.  RT 70:24-25.  Richard testified that he told his son "We'll pick it up and lets go out to

19   Camp 1, which is 6 miles away and then see what it was."  RT 71:1-3.  On cross-examination,

20   Richard testified that after he and Long found the camera on the log, they took the camera to

21   Long's house.[2]  RT 72:21:25; 73:1-8.

22   After hearing the evidence, the Magistrate Judge found Long guilty of violating 36 C.F.R.

23   §2.31(a)(2).  The Magistrate Judge stated:

24          ... "You're simply charged with tampering with Government
             property. Your attorney raises the question as to whether you knew
25          it was Government property when you tampered with it because he
             questions whether this label was on the back at the time you
26

27   ───────────────────
     [2]Richard testified that he owns Long's house.
28

                                          3

recovered the camera.  Well, clearly the label is on the inside because you mentioned that yourself to the ranger and clearly when you opened the camera at that point, you knew it was Government property before you took the card out of it.

So your clearly guilty of tampering with Government property and that is my verdict...

RT 82:9-20.

On October 14, 2008, Long filed a Motion for Judgment of Acquittal, or in the alternative a Motion for New Trial on the grounds that the court lacked territorial and legislative jurisdiction.  On October 21, 2008, Long requested that his October 14, 2008 motion also be considered a Common Law Motion in Arrest of Judgment.  The Magistrate Judge denied Long's motions.  On October 21, 2008, Long was sentenced to 12 months of informal, unsupervised probation, a fine of $490.00 and $10.00 penalty assessment payable by December 22, 2008.  On October 21, 2008, Long filed a Notice of Appeal.

## **SUFFICIENCY OF THE EVIDENCE FOR CONVICTION**

### Appellant's Argument

Long argues that the Magistrate Judge erroneously determined that jurisdiction existed because the Government failed to meet its burden of proving that jurisdiction existed in this case. Long alleges that he opened the camera at his house, which he claims is located approximately six miles outside of the National Park boundaries.  See Appellant's Brief at pp. 11-12.  Long contends that the Government did not present any evidence at trial to show that Long's house was located on National Park land.  Long argues that the Magistrate Judge erroneously found sufficient evidence to support a violation of 36 C.F.R. § 2.31(a)(2).

### Appellee's Response

The Government responds that the evidence presented at trial was sufficient to convict Long of tampering with government property.  The Government asserts that the evidence showed that the camera was placed within Yosemite National Park boundaries.  The Government contends that the witnesses testified that the camera was set up to take photographs of a section of roadway on government land.  The Government argues that because Long told Ranger Cagle

4

that he found the camera, opened it, disconnected the batteries, and removed the memory card,

"the reasonable inference is that this activity occurred at the location where [the camera] was

found- on Yosemite National Park land." The Government further argues that "there was no

evidence to the contrary" and that, at no stage in the bench trial was any doubt raised that the

offense occurred within Yosemite National Park, or that the Yosemite National Park falls within

the jurisdiction of the United States.


## LEGAL STANDARD

A.      Factual Sufficiency of Evidence

The sufficiency of the evidence to support a conviction following a bench trial is

reviewed de novo.  United States v. Jiang, 476 F.3d 1026, 1029 (9th Cir. 2007).  The standard for

reviewing the sufficiency of the evidence to support a criminal conviction is whether, "viewing

the evidence in the light most favorable to the prosecution, any rational trier of fact could have

found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443

U.S. 307, 319 (1979); United States v. Bucher, 375 F.3d 929, 934 (9th Cir. 2004).  This test

applies to both jury and bench trials.  United States v. Randolph, 93 F.3d 656, 660 (9th Cir.

1996).  All reasonable inferences that may be drawn from the evidence are to be drawn in the

government's favor.  United States v. Heuer, 4 F.3d 723, 731 (9th Cir. 1993); United States v.

Reese, 775 F.2d 1066, 1071 (9th Cir. 1985).  The reviewing court is required to "respect the

exclusive province of the fact-finder to determine the credibility of the witness, resolve

evidentiary conflicts, and draw reasonable inferences from proven facts, by assuming that the

fact-finder resolved all such matters in a manner which supports the verdict." United States v.

Khatami, 280 F.3d 907, 910 (9th Cir. 2002); United States v. Hubbard, 96 F.3d 1223, 1226 (9th

Cir. 1996).  In bench trials, "the judge weighs the evidence, determines the credibility of the

witnesses and finds the facts." United States v. Bales, 813 F.2d 1289, 1293 (4th Cir. 1987); see

United States v. Stanton, 501 F.3d 1093, 1100-01 (9th Cir. 2007).  "The court may select among

conflicting inferences to be drawn from the testimony." Bales, 813 F.2d at 1293; see Stanton,

501 F.3d at 1100-01; United States v. Jennings, 726 F.2d 189, 190 (5th Cir. 1984); see also

1   <u>Khatami</u>, 280 F.3d at 910.

2         B.     <u>36 C.F.R. § 2.31(a)(2)</u>

3        36 C.F.R. § 2.31(a)(2) in relevant part, prohibits the following conduct: "Tampering or

4   attempting to tamper with property or real property, or moving, manipulating or setting in motion

5   any of the parts thereof, except when such property is under one's lawful control or possession."

6   36 C.F.R. § 2.31(b) further reads:  "The regulations contained in this section apply, regardless of

7   land ownership, on all lands and waters within a park area that are under the legislative

8   jurisdiction of the United States."  Thus, in order to obtain a conviction under this section, the

9   Government must prove beyond a reasonable doubt that Long tampered with property that was

10  not under his lawful control or possession and did so on National Park land.  <u>See</u> <u>id.</u>

11

12                   **DISCUSSION**

13       The Magistrate Judge reasoned that because it was undisputed that there was a government

14  sticker inside the camera and given that Long admitted to the Rangers that he opened the camera

15  to take the memory card out of it, it follows that Long knew it was government property at that

16  point.  RT 82:9-20.  The Magistrate Judge, however, did not expressly discuss whether Long

17  opened the camera while on National Park property.  The evidence on this point is not convincing.

18       The Government argues that because Long admitted to Ranger Cagle that he found the

19  camera on park service land, opened it, disconnected the batteries and removed the memory card,

20  "the reasonable inference is that this activity occurred at the location where [the camera] was

21  found- on Yosemite National Park land.  There was no evidence to the contrary."  <u>See</u>

22  Government's Brief at pages 5-6.

23       In order for the court to draw a reasonable inference that Long tampered with the camera

24  on National Park land, the evidence would need to show that either Long opened the camera to

25  remove the memory card at or near the time he found the camera on National Park land or that a

26  government sticker was located on the outside of the camera, which would have put Long on

27  notice that the camera was government property at the time he found the camera on National Park

28  land.  The evidence, however, fails to establish either scenario.

1    With respect to the first scenario, Ranger Cagle testified that on September 8, 2007, he

2  met Long at the Four Seasons in Yosemite West after he was notified that a Park Service camera

3  had been found.  RT 51:20-22; 52:13-14.  Ranger Cagle further testified in pertinent part:

4  Q:    When you first approached Defendant Long, did he say anything regarding the camera?
           What did he say regarding the camera?
5
6  **A:    I asked him if he had found a camera and he told me he had found a camera on the
           railroad grade road at the end of Hinnis Ridge Road.**

7  Q:    What was – after he said he found the camera, what did he say next?

8  **A:    He said he found the camera on a log.  He picked the camera up.  He opened the
           camera.  He turned the camera off.  He disconnected the battery.  He took the
9          memory card out.**

10  Q:    Did he say why he took the memory card out of the camera?

11  **A.    He took the memory card out of the camera in order to determine what photos were
            on the memory card.**
12
     RT 53:20-54:1-13.
13
14      Ranger Cagle's testimony is insufficient to show that Long opened the camera on National

15  Park land because Ranger Cagle does not speak temporally and address the timing of Long's

16  actions.  Rather, Ranger Cagle's testimony appears to reiterate the general occurrence of the

17  events as told to him by Long after Long had returned the camera to the Park Ranger.  Ranger

18  Cagle's testimony establishes that Long found the camera on National Park land and opened the

19  camera at some point in time.  Ranger Cagle's  testimony, however, does not address where Long

20  was located at the time he opened the camera.

21      Richard, on the other hand, provided testimony that after Long found the camera on

22  National Park land, Long took the camera home and opened the camera.  Specifically, Richard

23  testified that he told his son "We'll pick [the camera] up and lets go out to Camp 1, which is 6

24  miles away[3] and then see what it was."  RT 71:1-3.  On cross-examination, Richard testified that

25  after he and Long found the camera on the log, he and Long proceeded with the camera to Long's

26  house.  RT 72:21:25; 73:1-8.  Richard's testimony indicates that Long took the camera to his

27  house for further inspection, opened the camera, and at that point discovered the government

28
           [3]Based on Richard's testimony on cross-examination, Richard's testimony on direct about
     "Camp one which is six miles away" appears to be a reference to Long's house.

property sticker on the inside of the camera.  Thus, based on Richard's testimony, Long would

have become aware that the camera was government property while he was at his own house and

not at the location where he found the camera.[4]  Moreover, the Government did not present any

evidence that Long's house is located on National Park land.  Ranger Cagle merely testified that

Long's house was located approximately six miles from the Four Seasons, which is located in

Yosemite West.  Accordingly, in light of the testimony as a whole, it is unclear whether Long

opened the camera at or near the time he found the camera on National Park land or whether he

opened the camera at his house.

    With respect to the second scenario, the Ranger's testimony does not establish that a

sticker was located on the outside of the camera.  At trial, Ranger Gulas testified that he placed

the subject camera on Yosemite Park land.  RT 12:5-8.  Ranger Gulas testified that there was a

NPS serial number located on the inside of the camera.  RT 19:4-9.  Ranger Gulas testified that a

sticker indicating that it was a government camera was possibly located on the back of the camera

when he had last seen it.  RT 21:1-25.  Ranger Brindeiro testified on cross-examination that he

only observed one government sticker on the inside of the camera.  RT 41:22-25; RT 42:1.  In

short, the Ranger's testimony merely establishes that the camera was located on National Park

land and that there was a government sticker on the inside of the camera.  Because the Rangers'

testimony fails to show that a sticker was located on the outside of the camera, Long was not put

on notice that the camera he found was government property at the time he found the camera on

National Park land.

    Accordingly, given that the Rangers' testimony did not address the timing of Long's

actions or prove that a sticker was located on the outside of the camera, the evidence is

insufficient to establish Long tampered with the camera while on National Park land.

    Further, despite the Government's argument that, "there was no evidence to the contrary,"

---

[4]The Court notes that the Magistrate Judge did not indicate that he questioned Richard's
credibility.  If the Magistrate Judge had said that he questioned Richard's testimony that the
Defendant took the camera home and then opened it, then the Magistrate Judge could have
placed more weight on Ranger Cagle's testimony.  Although Ranger Cagle does not speak
temporally about the Defendant's actions, Ranger Cagle's testimony, in the absence of Richard's
testimony, would have provided more support for the Government's argument that the tampering
occurred on National Park land (i.e. where the camera was initially found).

1  the burden was on the Government to present evidence that the tampering occurred on National

2  Park land.  The Government did not introduce evidence that Long opened the camera while on

3  National Park land.  Therefore, the Government failed to meet its burden.

4        The above evidence, when viewed in the light most favorable to the Government, is

5  insufficient to support Long's conviction for violation of 36 C.F.R. §2.36.  That is, a rational trier

6  of fact could not find the essential elements of 36 C.F.R. §2.36 beyond a reasonable doubt.

7

8                                          **<u>CONCLUSION</u>**

9        Long challenges his conviction for violation of 36 C.F.R. §2.36(a)(2) and argues that the

10 Magistrate Judge erroneously found that jurisdiction existed in this case.  In light of the

11 Government's failure to meet its burden to show that the alleged tampering occurred on National

12 Park land, there was insufficient evidence to support the conviction.

13       Accordingly, IT IS HEREBY ORDERED that Long's appeal is GRANTED and the

14 conviction is REVERSED.

15

16 IT IS SO ORDERED.

17

**Dated:     November 18, 2009               /s/ Anthony W. Ishii**

18                                   CHIEF UNITED STATES DISTRICT JUDGE

19

20

21

22

23

24

25

26

27

28